CRÉDITO Y AHORRO PONCEÑO, Plaintiff and Appellant, *v.* MERCEDES BEVERAGGI, Defendant and Appellee.

No. 7939. Agued May 3, 1939.—Decided November 22, 1939.

M. *Marcos Morales* for appellant.   M. *Guzmán Texidor* for appellee.

Mr. Justice De Jesús delivered the opinion of the Court.

The complaint in this case alleges, in brief: that the plaintiff bank is the owner of a certain urban property which is described, that the defendant possesses said house at sufferance; that plaintiff has demanded several times that she vacate and leave the premises free, and although she has offered to move, she has not done so to date. The complaint ends with the prayer that the ejectment be ordered, with costs, disbursements and attorney's fees to plaintiff.

The answer to the aforesaid sworn complaint accepts all the averments of the plaintiff as true and as a special defense states that the defendant and Francisco Alsina Santos were married in 1924 and went to live in the house in question, establishing their homestead therein. That on the demise of her husband the defendant continued to occupy and still occupies the property as her homestead, together with her minor child Luis Alsina, had in said marriage; "that although it is true that her deceased husband transferred the property described in the second paragraph of the complaint to José Domingo Rivera, from whom the plaintiff Crédito & Ahorro Ponceño acquired it, neither the defendant nor her husband received any consideration for said transfer and never did she or her husband transfer or waive in favor of any person, expressly or impliedly, the right of homestead they had in the aforesaid property, and never received from José Domingo Rivera nor from the plaintiff any consideration for their homestead right." Defendant also alleges that the property in issue is worth more than $500, and ends with the following prayer:

"Therefore, I beg this Honorable Court to render judgment holding that defendant has her homestead established in the property described in the complaint, and that the complaint lies; but on con-

dition that the ouster cannot take place until plaintiff pay to defendant the sum of $500 for the right of homestead that she has in the aforesaid property or that *judgment be rendered in a manner compatible with the averments of this answer.*"

Against the aforesaid answer, plaintiff filed a demurrer for want of facts to constitute an opposition to the complaint, or a set-off.

The case went to trial and the court overruled the demurrer and rendered judgment based on the evidence, dismissing the complaint, with costs to the defendant not including attorney's fees.

Plaintiff appealed to this Court and in its brief assigns the following errors:

"1. The District Court of Guayama erred in allowing the answer and dismissing the complaint, taxing plaintiff-appellant in costs, not including attorney's fees.

"2. The court *a quo* erred in overruling the demurrer to the answer for want of facts to constitute a good defense to the complaint.

"3. The court *a quo* erred in the mistaken appraisal of the evidence, because the proof submitted does not uphold the conclusion at which the court arrives, that there is a right of homestead in said property, that has not been waived."

We will discuss jointly the three assignments of error.

■ We know the averments of the petition. We shall now make a brief summary of the evidence presented to the trial court.

From the evidence it appears that Francisco Alsina Santos, while single, living with the defendant as man and wife, bought the aforesaid house, establishing their homestead thereon; that later they were married, on September 8, 1925, and went on living there; that he then sold it to José Domingo Rivera, and in the deed executed therefor on April 26, 1930, before the Notary Miguel Guzmán Texidor, it was stated that Francisco Alsina, the vendor, was married to Mercedes Beveraggi, who did not appear in the

deed because the property sold belonged solely to the vendor. After describing the property and stating it was free of liens, the following was said in the deed:

"Francisco Alsina sells, cedes, waives and transfers in favor of José Domingo Rivera, the urban property described in th's deed, that is, the lot and house with all appurtenances."

It was stated that the sale was made for the price of $1,600 which the vendor confessed having received to his complete satisfaction before the execution of the deed; but the right of homestead was not mentioned.

In spite of this sale, Alsina and the defendant continued to occupy the house and there is no evidence that they paid any rent to the purchaser.

On April 27, 1931, José Domingo Rivera executed a mortgage on the property in favor of the plaintiff bank to guarantee payment of the sum of $1,338.48 and interest thereon. On April 28, 1935, Alsina died and the defendant and her child continued to occupy the house. On January 26, 1937, José Domingo Rivera ceded the property to the plaintiff in payment of the mortgage and on July 29 of the following year the complaint of this suit was filed. During all the stated dates defendant has occupied the house without interruption and without paying any rent.

The Homestead Act in force when Alsina established his homestead in the house in issue way back in 1924, as well as when he sold it to José Domingo Rivera on April 26, 1930, was the one approved on March 12, 1903 (Comp. St. 1000–1005), Sections 541 et seq., Civil Code (1930 ed.)

All of the appellant's argument turns upon a mistaken conception as to the scope and extent of the Homestead Act of 1903. Appellant says, in page 41 of its brief:

"The right of homestead does not exist at common law; this privilege is purely statutory, created by a law or a special statute, and its nature and extent depends absolutely on the law creating it; and this Homestead Act is not one that can go over all the provisions of our system of law, of the basis of the same, our Civil Code, that reg-

ulates family and property rights; neither can it step over the provisions of the Mortgage Law which regulate the rights of property. Because of that, in the absence of any law or legal provision that forbids the husband to dispose of the property where the homestead has been established, there is nothing to stop the husband from mortgaging or selling said property: and he can mortgage or sell it in Puerto Rico without the consent of the wife in a case as the present one, where the property belongs solely to the husband."

However, Section 3 of the Homestead Act of 1903 (Section 543 of the Civil Code, 1930 ed.), contrary to the opinion of appellant, says:

"No release, waiver or conveyance of an estate so exempted shall be valid unless so expressly provided in the instrument of conveyance *by such householder, his wife or her husband, if he or she have one, or unless possession is obtained or given up pursuant to the conveyance, or without the orders of the district court directing the release thereof* whenever the exemption is continued to a child or children."

According to the aforesaid provision, once the right of homestead has been established upon a property, whether it belongs solely to one of the spouses or whether it belongs to the conjugal partnership, the right of homestead cannot be transferred or waived without the concurrence of both spouses, unless at the time of the transfer the spouses surrender possession or make delivery of the property to the purchaser.

In the case at bar, the husband executed the deed without mentioning the homestead right. The wife did not concur, who as we have seen, together with her husband at first and later as a widow occupied the house with the child had in the matrimony.

In the case of *Wilcox* v. *Registrar,* 44 P.R.R. 154, this Court interpreted Section 3 of the Homestead Act of 1903, and following the decision rendered in *Ramírez* v. *Registrar,* 39 P.R.R. 245, decided:

"Where property belonging to the separate estate of the husband is occupied by the family as a residence, the waiver of the homestead

right on such property must nevertheless be made by both spouses." (Syllabus).

Later, in the case of *López* v. *López,* 48 P.R.R. 315, 321, the necessity that the wife concur was again upheld as a requisite for the validity of a waiver of the homestead right on a private property of the husband. The court then said:

"It is argued that when the husband of the defendant, Miguel Morales, constituted the mortgage, he declared that said real property was not at all affected by any homestead right in favor of the debtor or of any other person. This statement, made exclusively by Miguel Morales, cannot prejudice the homestead right once constituted on the property. The defendant did not intervene in the mortgage contract, as it involved her husband's separate estate, and he, without the consent of his wife, could not dispose of the homestead or make any admission prejudicial of this right."

It will be seen that in the *López* case as well as in the one at bar, the right of homestead was claimed by the wife for the first time after the demise of the husband, sole owner of the property.

The provision of Section 3 of the Homestead Act of 1903 that requires the consent of both spouses for the validity of the waiver or transfer of the homestead right is not exclusive in Puerto Rico; on the contrary, it is the general rule in the majority of the continental jurisdictions.

"In nearly all states the homesteader's power of alienation is restricted to some extent, but there is much variation in the degree of restraint imposed. The usual provision is that the homesteader if married can alien the land only if joined by his spouse." 4 Encyclopedia of Social Sciences, 443.

A statute which in that manner limits the right of one of the spouses to freely dispose of his separate state, at first sight appears oppressive and unconstitutional, but any doubt as to its validity vanishes as soon as we consider the tendency that during the last twenty-five years has been present in the Anglo-American jurisprudence as well as the European, a tendency to socialize the law, superseding inde-

pendent rights to the welfare of society. This tendency that modern jurists call "Socialization of Law", seems to have reached its full development, and as Dean Roscoe Pound states in his article "The End of Law," 27 Harvard Law Review 226, has produced the following changes in the law: (1) limitations on the use of property and the so-called anti-social exercise of rights, (2) limitations on freedom of contract, (3) limitations on the *ius disponendi,* (4) limitations on the power of the creditor or injured party to exact satisfaction, (5) imposition of liability without fault, particularly in the form of responsibility for agencies employed, (6) change of *res communes* and *res nullius* into *res publicæ,* and (7) insistence upon the interest of society in dependent members of the household.

The same author, speaking about the limitations imposed on the right to freely dispose of property, *ius disponendi,* goes on to say:

"Limitations on the *ius disponendi* are chiefly statutory. Four examples may be noted: *the requirement in many states that the wife join in a conveyance of the family home even though it is the sole property of the husband,* the spendthrift trust, sometimes legislative, but chiefly judicial in origin, legislation requiring that the wife join in a mortgage of the household furniture by the husband, even though it is his sole property and legislation requiring that the wife join in an assignment of the husband's wages." Page 230.

What has been stated shows that a statute such as ours does nothing but follow the tendency of modern legislation which tends to the socialization of law, setting aside, as in this case, the individual right of the father for the sake of the welfare of the family, which is the basis of society.

As the law in force at the time of the sale made by Alsina to José Domingo Rivera required that for the transfer of the homestead the wife, defendant herein, should expressly consent, since she did not concur in the deed of transfer and continued to occupy the house without interruption, first together with her husband and afterwards with her

son, the right of homestead was not alienated and therefore she cannot be deprived of the aforesaid right without the compensation determined by law.

Appellant maintains that the lower court committed error in overruling the demurrer filed by him against the answer to the complaint.

We accept that the answer filed by defendant's counsel leaves much to be desired but from it one clear fact appears, which opposes the averments of the complaint and clearly showed to plaintiff the position assumed by the defendant: to wit, that she claimed the right of homestead. It would have been more in order that the answer had not accepted unconditionally, as it did, all the averments of the complaint; but as Section 122 of the Code of Civil Procedure (1933 ed), provides, "in the construction of a pleading, for the purpose of determining its effect, its allegations must be liberally construed, with a view to substantial justice between the parties." And in the present case the averments of the answer could in no wise mislead the plaintiff appellant.

Speaking about the modern tendency to do away with all formalities and construe the law liberally so that complete justice is made to the parties, the eminent Judge Cardozo says:

"We see the same process at work in other fields. We no longer interpret contracts with meticulous adherence to the letter when in conflict with the spirit. We read covenants into them by implication when we find them 'instinct with an obligation' imperfectly expressed. 'The law has outgrown its primitive stage of formalism when the precise word was the sovereign talisman, and every slip was fatal.' Perhaps it is in the field of procedure that we have witnessed the chief changes; though greater ones must yet be wrought. Indictments and civil pleadings are viewed with indulgent eyes. Rulings upon questions of evidence are held with increasing frequency to come within the discretion of the judge presiding at the trial. Errors are no longer ground for the upsetting of judgments with the ensuing horror of new trials, unless the appellate court is satisfied that they have affected the result. Legislation has sometimes been necessary to

free us from the old fetters. Sometimes the conservatism of judges has threatened for an interval to rob the legislation of its efficacy. This danger was d'sclosed in the attitude of the courts toward the. reforms embodied in codes of practice, in the days when they were first enacted. Precedents established in those times exert an unhappy influence even now. None the less, the tendency today is in the direction of a growing liberalism. The new spirit has made its way gradually; and its progress, unnoticed step by step, is visible in retrospect as we look back upon the distance traversed. The old forms remain, but they are filled with a new content. We are getting away from what Ehrlich calls 'die spierlerische und die mathematische Entscheidung,' the conception of a lawsuit either as a mathematical problem or as a sportsman's game. Our own Wigmore has done much to make that conception out of date. We are thinking of the end which the law serves, and fitt'ng its rules to the task of service.'' Cardozo, The Nature of Judicial Process, pp. 100 *et seq.*

For the foregoing reasons we are of opinion that the the lower court did not commit error in overruling the demurrer to the answer:

■ In the case of *Arzuaga* v. *Ramírez,* 50 P.R.R. 102, it was held that if defendant has a homestead right, a cause of action in unlawful detainer does not lie until the plaintiff pays or deposits in court the amount of the homestead. And in that of *Franceschi* v. *Claudio,* 51 P.R.R. 479, 487-488, it was said:

''Considering that the prayer of the defendant-appellant is compatible with the decision in the case of *Arzuaga* v. *Ramírez, supra,* and that it is acceptable because it puts an end to the controversy between the parties, the judgment appealed from is modified in the sense that the defendant-appellant is acknowledged to have a right of homestead in the house that he and his family occupy in the plaintiff's property and the dispossess'on sought shall be decreed upon payment by the plaintiffs to the defendant of the sum of $500, in satisfaction of his homestead right.''

In the case at bar the situation is different from that which prevailed when the *Claudio* case was decided, because when this one was decided by the lower court the law of costs then in force left to the discretion of the court the

imposition thereof, while the case at bar was decided under the present law of costs which orders the trial court to grant costs to the party in whose favor judgment is rendered. So that if in the present case, following that of *Franceschi* v. *Claudio, supra,* we were to modify the judgment appealed from so as to find for the plaintiff and order the ejectment prayed for, after payment by plaintiff to defendant of the amount of $500 in consideration of her right of homestead, we would necessarily have to tax defendant in costs who is in reality the victorious party and has not been stubborn in the defense of this suit. Therefore, following the case of *Arzuaga* v. *Ramirez* and in accordance with the alternate prayer of the answer, the appeal must be dismissed and the judgment affirmed, saving to plaintiff the right to file his case anew after the amount of the homestead has been legally deposited in court or paid directly to defendant.

#### DISSENTING OPINION OF MR. JUSTICE WOLF.

Section 3 of the Homestead Act of March 12, 1903, provides:

"That no release, waver (waiver) or conveyance of an estate so exempted shall be valid unless so expressly provided in the instrument of conveyance by such householder, his or her wife or husband, **if he or she** have one, or unless possession is obtained or given up pursuant to the conveyance, or without the orders of the district court directing the release thereof whenever the exemption is continued to a child or children."

Immediately it will be seen from the words "that no release . . . of an estate so exempted shall be valid unless so expressly provided in the instrument of conveyance by such householder, his or her wife . . . or unless possession is obtained or given up pursuant to the conveyance" that a conveyance is valid if possession is obtained or given up pursuant to the conveyance.

It is my opinion that in Puerto Rico the owner of a piece of separate property may give up the possession thereof without the consent of his wife; that the owner on selling a piece of property may abandon the same and put the buyer in possession and that no protest of the wife could prevent the husband from putting the purchaser in such possession; that under the Civil Law the domicile of the family *prima facie* is determined by the husband and the wife is bound to follow him. The exceptions, I think, have no application to this case.

Now, there is no question that this kind of delivery of possession by the husband abandoning the property was not attempted in this case, but the husband made a formal deed of his separate property to José Domingo Rivera.

Section 1351 of the Civil Code (1930 ed.) (Sec. 1365, 1911 ed.) provides:

"A thing sold shall be considered as delivered, when it is placed in the hands and possession of the vendee.

"When the sale should be made by means of a public instrument, the execution thereof shall be equivalent to the delivery of the thing which is the object of the contract, if in said instrument the contrary does not appear or may be clearly inferred."

Section 1351, *supra,* is absolute in its terms and the execution of a formal deed is equivalent to the physical tradition of the property.

The transfer of possession by deed of the property is sometimes spoken of as a symbolic delivery, but the code does not speak of a symbolic delivery but makes the sale by deed equivalent to the actual delivery of possession.

In *Fuertes* v. *Nogueras et al.,* 32 P.R.R. 264, we said:

"But even without a lease if the purchaser allows the vendor to remain in possession the right to the possession or the civil possession is transferred."

And Section 1365 of the Civil Code was cited. What I am saying is that where a formal deed is made, one of the exceptions enumerated by Section 3 would take place.

In the case of a husband choosing absolutely to sell his property where he might have had a right of homestead and makes no reservation in the deed of the homestead, he should fall, if there was a right of homestead, within the exception made in Section 3, *supra*. In the present case no independent right of the wife arose and the only homestead that existed at the time was vested in the husband. And he had the right, I may repeat, either to deliver the thing physically or to make a deed therefor, as he did. Perhaps a different position would be presented if there had been no voluntary deed by the husband; in other words, if a creditor, by mortgage or otherwise, was attempting to execute the property against the will of the husband.

Some aid to this construction may be found from the title of this Act: "An Act to define homestead and to exempt if from forced sale."

Other things that aid this construction of the statute are as follows:

The property conveyed may be worth less than $500 and then the defendant who attempted to convey a whole piece of separate property could remain in possession of it forever.

But one does not have to travel very far afield other than to consider the actual facts of this case. Something like $1,600 was paid for the property and presumptively, as a matter of fact, it was not worth any more, not including the right of homestead; that everybody concerned probably thought there was an entire conveyance of the property. Then it does not seem just that the wife, after her husband's death, should obtain another $500 out of the property.

The homestead right is under the law an "estate." The word is taken from continental American sources. After a "life tenancy" many a person has a reversion. Such a reversion may be considered an "estate." So may a contingent remainder and other limitations. The right to this "estate" of homestead is not actively exercised until some occasion for its use arises. It is ordinarily an exemption

against creditors. To say that the purchaser of a piece of property established his homestead therein is to beg the question. A homestead is a remnant of a right of property. It does not attach to a property which has been conveyed away by the act of the sole owner.